RISING DOUGH, INC. (d/b/a MADISON
SOURDOUGH), WILLY MCCOYS OF
ALBERTVILLE LLC, WILLY MCCOYS OF
ANDOVER LLC, WILLY MCCOYS OF
CHASKA LLC, WILLY MCCOYS OF
SHAKOPEE LLC, and WHISKEY JACKS
OF RAMSEY LLC (d/b/a WILLY MCCOYS
RAMSEY), individually and on behalf of all
others similarly situated,

                         Plaintiffs,

      v.

SOCIETY INSURANCE,

                      Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Rising Dough, Inc. (d/b/a Madison Sourdough) ("Madison Sourdough") and

Willy McCoys of Albertville LLC, Willy McCoys of Andover LLC, Willy McCoys of Chaska

LLC, Willy McCoys of Shakopee LLC (d/b/a McCoys Copper Pint), and Whiskey Jacks of

Ramsey, LLC (d/b/a Willy McCoys Ramsey) (collectively "Willy McCoys"), individually and on

behalf of the other members of the below-defined nationwide classes (collectively, the "Class"),

bring this class action against Defendant Society Insurance, and in support thereof state the

following:

## I.     NATURE OF THE ACTION

1.     Plaintiff Madison Sourdough operates a mill, bakery, café and patisserie in Madison

Wisconsin.  Until the business interruption detailed herein, Madison Sourdough produced breads

and pastries 360 days of the year, supplying not only its café with unique breads and pastries, but

also distributing the freshest bakery products to Madison's finest restaurants, grocery stores, and coffee shops. Madison Sourdough began its days early so its customers across the city could experience this culinary craft at its best. Madison Sourdough specializes in naturally leavened, *i.e.* sourdough, breads using Wisconsin grown wheat, rye, and corn. Its special, yeast-leavened breakfast pastries are called Viennoiserie and are based on classic French techniques. Madison Sourdough laminates all of its Viennoiserie with premium Wisconsin butter and enriches its doughs with local eggs and milk. Its café, which seats approximately 80 people, serves lunch and breakfast throughout the week, employing chefs, servers, and dishwashers.

2.     Plaintiffs Willy McCoys is a 1920's prohibition-themed group of taverns for the "everyday Joes" with seven locations throughout the Twin Cities metropolitan region of Minnesota, including Albertville, Andover, Shakopee, Ramsey, Champlin, Chaska, and Bloomington, Minnesota.[1] Willy McCoys also provides event services, including on-site event spaces for banquets and other community events, as well as off-site catering. As an established neighborhood restaurant and bar for patrons in the local community, Willy McCoys has earned a positive reputation in the Twin Cities metro region for providing consistent, quality food and services. Based upon this reputation, Willy McCoys has developed a steady and profitable client base, and strives to maintain its reputation and the services it provides to the community and its patrons.

3.     To protect their businesses in the event that they suddenly had to suspend operations for reasons outside of their control, or in order to prevent further property damage, Plaintiffs purchased insurance coverage from Society Insurance, including special property coverage, as set

---

[1] The Champlin and Bloomington locations did not have insurance policies with Society Insurance, and therefore, have not been named as parties to this suit.

2

forth in Society Insurance's Businessowner's Special Property Coverage Form (Form TBP2 05-15) ("Special Property Coverage Form").

4.      Society Insurance's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following damage to property.

5.      Society Insurance's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

6.      Society Insurance's Special Property Coverage Form provides additional "Contamination" coverage that pays for the actual loss of business income and extra expense caused by "'Contamination' that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product." The policy broadly defines a covered loss due to "Contamination" as occurring in a variety of circumstances, including an action by a public health or other governmental authority that prohibits access to the described premises and adverse "publicity" resulting from the discovery or suspicion of "Contamination." The Special Property Coverage Form defines "Contamination" as "a defect, deficiency, inadequacy or dangerous condition in your products, merchandise or premises."

7.      Society Insurance's Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

8.      Society Insurance's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Society's insured "must see that the following are done in the event of loss or damage to Covered Property . . . [t]ake all reasonable

3

steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

9.     Unlike many policies that provide Business Income (also referred to as "business interruption") coverage, Society Insurance's Special Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

10.     Plaintiffs Willy McCoys were forced to suspend or reduce business at their Willy McCoys taverns due to COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") and the resultant Executive Orders issued by the Governor of Minnesota mandating the closure of businesses like Willy McCoys taverns for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

11.     Plaintiff Madison Sourdough was, likewise, forced to suspend or reduce business due to COVID-19 and the resultant Executive Orders by the Governor of Wisconsin requiring the closure of businesses like Madison Sourdough, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

12.     Upon information and belief, Society Insurance has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.  Indeed, Society Insurance has denied Plaintiffs Willy McCoys' claims under its Society Insurance policy.

## II.     <u>JURISDICTION AND VENUE</u>

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs Willy McCoys and Defendant are citizens of different states, and because (a) the Class

4

consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

### III.    THE PARTIES

*Plaintiffs*

15.    Madison Sourdough is a Wisconsin corporation, with its principal place of business in Madison, Wisconsin.   Madison Sourdough owns and operates a mill, bakery, café, and patisserie, all of which are located in Madison, Wisconsin

16.    Willy McCoys of Albertville LLC ("Willy McCoys Albertville") is a Minnesota limited liability company, with its principal place of business in Albertville, Minnesota.  Willy McCoys Albertville owns and operates a restaurant and bar, Willy McCoys, which is located in Albertville, Minnesota.

17.    Willy McCoys of Andover LLC ("Willy McCoys Andover") is a Minnesota limited liability company, with its principal place of business in Andover, Minnesota.  Willy McCoys Andover owns and operates a restaurant and bar, Willy McCoys, which is located in Andover, Minnesota.

18.    Willy McCoys of Chaska LLC ("Willy McCoys Chaska") is a Minnesota limited liability company, with its principal place of business in Chaska, Minnesota. Willy McCoys Chaska owns and operates a restaurant and bar, Willy McCoys Chaska, which is located in Chaska, Minnesota.

19.    Willy McCoys of Shakopee LLC (d/b/a McCoys Copper Pint) ("McCoys Shakopee") is a Minnesota limited liability company, with its principal place of business in

5

Shakopee, Minnesota. Willy McCoys Shakopee owns and operates a restaurant and bar, McCoys Copper Pint, which is located in Shakopee, Minnesota.

20. Whiskey Jacks of Ramsey, LLC (d/b/a Willy McCoys Ramsey) ("Willy McCoys Ramsey") is a Minnesota limited liability company, with its principal place of business in Ramsey, Minnesota. Willy McCoys Ramsey owns and operates a restaurant and bar, Willy McCoys Ramsey, which is located in Ramsey, Minnesota.

*Defendant*

21. Society Insurance is a mutual insurance company organized under the laws of the State of Wisconsin, with its principal place of business in Fond du Lac, Wisconsin. It is authorized to write, sell, and issue insurance policies providing property and business income coverage in Wisconsin and Minnesota. At all times material hereto, Society Insurance conducted and transacted business through the selling and issuing of insurance policies within Wisconsin and Minnesota, including, but not limited to, selling and issuing property coverage to Madison Sourdough and Willy McCoys.

## IV. FACTUAL BACKGROUND

### A. *The Special Property Coverage Form Protecting Willy McCoys and Madison Sourdough*

22. In return for the payment of a premium, Society Insurance issued Policy No. TRM54814711 to Madison Sourdough for a policy period of January 1, 2020 to January 1, 2021, including a Businessowners Special Property Coverage Form. Policy No. TRM54814711 is attached hereto as Exhibit A. Madison Sourdough has performed all of its obligations under Policy No. TRM54814711, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is the Madison Sourdough bakery at 916 Williamson Street, Madison, Wisconsin.

6

23.     In return for the payment of a premium, Society Insurance issued Policy No. BP19022033-0 to Willy McCoys Albertville for a policy period of August 1, 2019 to August 1, 2020, including a Businessowners Special Property Coverage Form.  Policy No. BP19022033-0 is attached hereto as Exhibit B.  Willy McCoys Albertville has performed all of its obligations under Policy No. BP19022033-0, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is the Willy McCoys tavern at 5651 La Centre Avenue, Albertville, Minnesota.

24.     In return for the payment of a premium, Society Insurance issued Policy No. BP19013654-0 to Willy McCoys Andover for a policy period of June 15, 2019 to June 15, 2020, including a Businessowners Special Property Coverage Form.  Policy No. BP19013654-0 is attached hereto as Exhibit C.  Willy McCoys Andover has performed all of its obligations under Policy No. BP19013654-0, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is the Willy McCoys tavern at 13655 Martin Street NW, Andover, Minnesota.

25.     In return for the payment of a premium, Society Insurance issued Policy No. BP19022056-0 to Willy McCoys Chaska for a policy period of August 1, 2019 to August 1, 2020, including a Businessowners Special Property Coverage Form.  Policy No. BP19022056-0 is attached hereto as Exhibit D. Willy McCoys Chaska has performed all of its obligations under Policy No. BP19022056-0, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is the Willy McCoys Chaska tavern at 320 Pioneer Trail, Chaska, Minnesota.

26.     In return for the payment of a premium, Society Insurance issued Policy No. BP19019803-0 to Willy McCoys Shakopee for a policy period of June 1, 2019 to June 1, 2020, including a Businessowners Special Property Coverage Form.  Policy No. BP19019803-0 is

7

attached hereto as Exhibit E. Willy McCoys Shakopee has performed all of its obligations under Policy No. BP19019803-0, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is the McCoys Copper Pint tavern at 1710 Crossings Boulevard, Shakopee, Minnesota.

27. In return for the payment of a premium, Society Insurance issued Policy No. BP19022048-0 to Willy McCoys Ramsey for a policy period of August 15, 2019 to August 15, 2020, including a Businessowners Special Property Coverage Form. Policy No. BP19022048-0 is attached hereto as Exhibit F. Willy McCoys Ramsey has performed all of its obligations under Policy No. BP19022048-0, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is the Willy McCoys Ramsey tavern at 6415 Highway 10 NW, Suite 100, Ramsey, Minnesota.

28. Each Plaintiff's Special Property Coverage Form, included within the policies attached as Exhibits A-F, includes identical Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor coverages.

29. In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by Society Insurance, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to Plaintiffs Willy McCoys and Madison Sourdough, under the heading "Covered Causes of Loss," Society Insurance agreed to "pay for direct physical loss or damage to Covered Property" "unless the loss is excluded or limited by" the Special Property Coverage Form.

30. In the Special Property Coverage Form, Society Insurance did not exclude or limit coverage for losses from viruses.

8

31.     Losses due to COVID-19 are a Covered Cause of Loss under the Society Insurance policies with the Special Property Coverage Form.

32.     In the Special Property Coverage Form, Society Insurance agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Society Insurance agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 12 consecutive months after the date of direct physical loss or damage."

33.     "Business Income" means net income (or loss) before tax that Plaintiffs would have earned "if no physical loss or damage had occurred."

34.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

35.     In the Special Property Coverage Form, Society Insurance also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds

would not have incurred if there had been no direct physical loss or damage to the Covered Property.

36.     "Extra Expense" means expenses "to avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace property.

37.     Society Insurance also agreed to "pay for the actual loss of Business Income" that Plaintiffs sustain "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority prohibits access to the property and its surrounding area and takes such action "in response to dangerous physical conditions."

38.     Society Insurance's Special Property Coverage Form provides "Contamination" coverage that pays for the actual loss of Business Income and Extra Expense caused by "'Contamination' that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product." The Special Property Coverage Form broadly defines a covered loss due to "Contamination" as occurring in a variety of circumstances, including the following: (a) "Contamination" that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product; (b) a "Contamination threat", or (c) "publicity" resulting from the discovery or suspicion of "Contamination." The Special Property Coverage Form defines "Contamination" as "a defect, deficiency, inadequacy or dangerous condition in your products, merchandise or premises."

39.     Society Insurance's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Society's insured "must see that the following are done in the event of loss or damage to Covered Property . . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses

10

necessary to protect the Covered Property, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

40.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, Contamination, and Sue and Labor provisions of the Society Insurance policy.

**B.     *The Covered Cause of Loss***

41.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (the "Closure Orders").

### 1.     <u>The Minnesota Closure Orders</u>

42.     On March 13, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-01, "Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19." Governor Walz encouraged individual Minnesotans to continue "their individual prevention efforts such as staying home when feeling sick, frequently washing their hands, and monitoring information about COVID-19."

43.     On March 16, 2020, Governor Walz issued Emergency Executive Order 20-04, ordering closure of restaurants for on-premises consumption, bars, taverns, and a variety of other public accommodations.

44.     The purpose of Executive Order 20-04 was to slow the spread of the COVID-19 pandemic in public accommodations in which Minnesotans congregate that "pose a threat to public health by providing environments for the spread of COVID-19." This order expressly prohibited the public from entering, using, or occupying "restaurants" "and other places of public accommodation offering food or beverage for on-premises consumption."

11

45.     Executive Order 20-04 made it a crime, punishable by up to 90 days in jail and/or $1,000.00 fine, to violate the Order and enter, use, or occupy a restaurant or bar, such as Willy McCoys.

46.     Pursuant to Executive Order 20-04, all restaurants, bars, and places of public accommodation were prohibited from opening to the public for on-site consumption and were to remain closed from March 17, 2020 through March 27, 2020.

47.     On March 25, 2020, Governor Walz issued Emergency Executive Order 20-18 extending the mandatory closure of restaurants, bars, and places of public accommodation to the public and on-site consumption to May 1, 2020 and further ordering that all mandates set forth in Executive Order 20-04 shall remain in effect until that date.

48.     On March 25, 2020, Governor Walz also issued Emergency Executive Order 20-20, in which he ordered "all persons currently living within the State of Minnesota … to stay at home or in their place of residence" except for certain exempted essential activities and work, effective at 11:59 pm on March 27, 2020, and continuing through 5:00 pm on April 10, 2020 (a.k.a. Minnesota's Shelter-in-Place Order).

49.     The purpose of Executive Order 20-20 was to slow the spread of the COVID-19 pandemic.  In Executive Order 20-20, the Governor also declared that the "restrictions on restaurants, bars, and other places of public accommodation adopted in Executive Orders 20-04 and 20-18 remain in effect."

50.     Executive Order 20-20 provides that a violation of the Shelter-in-Place Order is punishable by up to 90 days in jail and/or a fine not to exceed $1,000.00.

51.     On April 8, 2020, Governor Walz issued Emergency Executive Order 20-33, in which he extended the Shelter-in-Place Order to 11:59 p.m. on May 3, 2020.

52.    The purpose of Executive Order 20-33 was to continue Minnesota's measures to slow the spread of the COVID-19 pandemic.

### 2.    **The Wisconsin Closure Orders**

53.    On March 12, 2020, Wisconsin Governor Tony Evers issued Executive Order 72, "Declaring a Health Emergency in Response to the COVID-19 Coronavirus."  In the accompanying press release, Governor Evers reminded people of simple steps to avoid getting sick, including frequent hand washing, covering coughs and sneezes, and staying home when sick.

54.    On March 16, 2020, Governor Evers issued Emergency Order 4, effective at 12:01 am on March 17, 2020, ordering "a statewide moratorium on mass gatherings of 50 people or more to mitigate the spread of COVID-19."  Restaurants and bars were limited to "50 percent of seating capacity or 50 total people, whichever is less," and were required to maintain "distancing of 6 feet between tables, booths, bar stools, and ordering counters."

55.    On March 17, 2020, Governor Evers issued Emergency Order 5, effective at 5:00 pm on March 17, 2020, prohibiting gatherings of "10 or more people in a single room or single confined space at the same time."  Restaurants were allowed to "remain open for take-out or delivery service only," and were required to "preserve social distancing of six feet between customers during pick up."

56.    On March 20, 2020, Governor Evers issued Emergency Order 8, "Updated Mass Gathering Ban," further detailing the limit on bars and restaurants to take-out and delivery (with no delivery of alcoholic beverages to retail customers unless they paid in person).

57.    On March 24, 2020, Governor Evers issued Emergency Order 12, a "Safer At Home Order."  Governor Evers stated: "Despite prior emergency orders banning mass gatherings, the rates of infection continue to drastically increase, necessitating additional measures to slow the rate of infection and save lives."  All individuals present within the state were ordered "to stay at

13

home or their place of residence," with certain exceptions. Bars and restaurants remained limited to take-out and delivery (with no delivery of alcoholic beverages to retail customers).

58.    Executive Order 12 provides that a violation of the Order is punishable by up to 30 days in jail and/or a fine not to exceed $250.00.

### 3.    The Impact of COVID-19 and the Closure Orders

59.    The presence of COVID-19 caused "direct physical loss of or damage to" each "Covered Property" under the Plaintiffs' policies, and the policies of the other Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension of operations during a period of restoration.

60.    The Closure Orders, including the issuance of Minnesota Emergency Executive Order Nos. 20-04, 20-18, 20-20 and 20-33 and Wisconsin Executive Orders 4, 5, 8 and 12, prohibited access to Plaintiffs and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

61.    As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other Class members lost Business Income and incurred Extra Expense.

62.    On or about March 17, 2020, Willy McCoys submitted claims for each of its locations named herein to Society Insurance under each location's respective policy.

63.    On March 26, 2020, Society Insurance denied Willy McCoys' claims. Society denied that COVID-19 was a Covered Cause of Loss but did not identify any exclusion from coverage.

64.    Indeed, Society Insurance has, on a widescale basis with many if not all of its insureds, refused to provide Business Income, Extra Expense, Civil Authority, Contamination or

14

Sue and Labor coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of business.

<h2 style="text-align:center">V.    <u>CLASS ACTION ALLEGATIONS</u></h2>

65.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

66.    Plaintiffs Willy McCoys seek to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Society Insurance; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Society Insurance property insurance policy; (c) made a claim under their property insurance policy issued by Society Insurance; and (d) were denied Business Income coverage by Society Insurance for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Society Insurance; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Society Insurance; and (d) were denied Civil Authority coverage by Society Insurance for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Society Insurance; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Society Insurance property insurance policy; (c) made a claim under their property insurance policy issued by Society Insurance; and (d) were denied Extra Expense coverage by Society Insurance despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had Contamination coverage under a property insurance policy issued by Society Insurance; (b) suffered a suspension of business, caused by COVID-19, at the premises covered by their Society Insurance property insurance policy; (c)

15

made a claim under their property insurance policy issued by Society Insurance; and (d) were denied Contamination coverage by Society Insurance for the suspension of business caused by COVID-19 (the "Contamination Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Society Insurance; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Society Insurance property insurance policy; (c) made a claim under their property insurance policy issued by Society Insurance; and (d) were denied Sue and Labor coverage by Society Insurance in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

67.     Plaintiffs Willy McCoys and Madison Sourdough also seek to represent nationwide classes defined as:

- All persons and entities with Business Income coverage under a property insurance policy issued by Society Insurance that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Society Insurance that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Society Insurance that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Society Insurance property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with Contamination coverage under a property insurance policy issued by Society Insurance that suffered a suspension of business, caused by COVID-19, at the premises covered by their Society Insurance property insurance policy (the "Contamination Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by Society Insurance that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their

16

Society Insurance property insurance policy (the "Sue and Labor Declaratory Judgment Class").

68.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

69.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

70.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

71.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.  Society Insurance issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

    b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    c.  whether Society Insurance wrongfully denied all claims based on COVID-19;

17

d.  whether Society Insurance's Business Income coverage applies to a suspension of business caused by COVID-19;

e.  whether Society Insurance's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f.  whether Society Insurance's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Society Insurance's Contamination coverage applies to a loss of Business Income and Extra Expense as a result of COVID-19;

h.  whether Society Insurance's Sue and Labor provision applies to require Society Insurance to pay for efforts to reduce damage caused by COVID-19;

i.  whether Society Insurance has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

j.  whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

72.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority Contamination, Extra Expense, and Sue and Labor coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

18

73.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

74.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

75.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

76.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

19

Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

77.     Plaintiffs Willy McCoys ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

78.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class.

79.     Plaintiffs' Society Insurance policies, as well as those of the other Business Income Breach Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Breach Class members' losses for claims covered by the policy.

80.     In the Special Property Coverage Form, Society Insurance agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

81.     A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Society Insurance agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 12 consecutive months after the date of direct physical loss or damage."

20

82. "Business Income" means net income (or loss) before tax that Plaintiffs and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred."

83. COVID-19 caused direct physical loss and damage to Plaintiffs' and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiffs and the other Business Income Breach Class members' Society Insurance policies.

84. Plaintiffs and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

85. By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

86. As a result of Society Insurance's breaches of the Policies, Plaintiffs and the other Business Income Breach Class members have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

## COUNT II
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Breach Class)

87. Plaintiffs Willy McCoys ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

88.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

89.     Plaintiffs' Society Insurance policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' and the other Civil Authority Breach Class members' losses for claims covered by the policy.

90.     Society Insurance promised to "pay for the actual loss of Business Income" sustained "and any Extra Expense caused by action of civil authority that prohibit access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority takes its action "in response to dangerous physical conditions."

91.     The Closure Orders triggered the Civil Authority provision under Plaintiffs' and the other members of the Civil Authority Breach Class's Society Insurance policies.

92.     Plaintiffs and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies, and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

93.     By denying coverage for any business losses incurred by Plaintiffs and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

94.     As a result of Society Insurance's breaches of the Policies, Plaintiffs and the other members of the Civil Authority Breach Class have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

22

## COUNT III
## BREACH OF CONTRACT – CONTAMINATION COVERAGE
### (Claim Brought on Behalf of the Contamination Breach Class)

95.     Plaintiffs Willy McCoys ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

96.     Plaintiffs bring this Count individually and on behalf of the other members of the Contamination Breach Class.

97.     Plaintiffs' Society Insurance policies, as well as those of the other Contamination Breach Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' and the other Contamination Breach Class members' losses for claims covered by the policy.

98.     Society Insurance promised to "pay for the actual loss of Business Income and Extra Expense caused by 'Contamination' that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product."

99.     Society Insurance specifically defines "Contamination" as "a defect, deficiency, inadequacy or dangerous condition in your products, merchandise or premises."

100.     The Special Property Coverage Form also provides a broad definition for determining when a covered loss due to "Contamination" occurs, including the following: (a) "Contamination" that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product; (b) a "Contamination threat", or (c) "publicity" resulting from the discovery or suspicion of "Contamination."

101.     COVID-19 constitutes Contamination that resulted in the Closure Orders that prohibits access to described premises or production of product.

102.     Plaintiffs and the other members of the Contamination Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

103.     By denying coverage for any business losses incurred by Plaintiffs and other members of the Contamination Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

104.     As a result of Society Insurance's breaches of the Policies, Plaintiffs and the other members of the Contamination Breach Class have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

105.     Plaintiffs Willy McCoys ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

106.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Breach Class.

107.     Plaintiffs' Society Insurance policies, as well as those of the other Extra Expense Breach Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Breach Class members' losses for claims covered by the policy.

108.     In the Special Property Coverage Form, Society Insurance agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

24

109.    "Extra Expense" means expenses "to avoid or minimize the suspension of business and to continue 'operations,'" and also includes expenses "to repair or replace property."

110.    Due to COVID-19 and the Closure Orders, Plaintiffs and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

111.    Plaintiffs and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

112.    By denying coverage for any business losses incurred by Plaintiffs and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

113.    As a result of Society Insurance's breaches of the Policies, Plaintiffs and the other members of the Extra Expense Breach Class have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

**COUNT V**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

114.    Plaintiffs Willy McCoys ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

115.    Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

116.    Plaintiffs' Society Insurance policies, as well as those of the other Sue and Labor Breach Class members, are contracts under which Society Insurance was paid premiums in

25

exchange for its promise to pay Plaintiffs and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

117.    In the Special Property Coverage Form, Society Insurance agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

118.    In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

119.    Plaintiffs and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

120.    By denying coverage for any Sue and Labor expenses incurred by Plaintiffs and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

121.    As a result of Society Insurance's breaches of the Policies, Plaintiffs and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

**COUNT VI**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

122.    Plaintiffs Willy McCoys and Madison Sourdough ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

26

123.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

124.     Plaintiffs' Society Insurance policies, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class members' losses for claims covered by the Policy.

125.     Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

126.     Society Insurance has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

127.     An actual case or controversy exists regarding Plaintiffs' and the other Business Income Declaratory Judgment Class members' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

128.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i.     Plaintiffs' and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the

necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii. Society Insurance is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT VII
## DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)

129.    Plaintiffs Willy McCoys and Madison Sourdough ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

130.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

131.    Plaintiffs' Society Insurance policies, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

132.    Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

133.    Society Insurance has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

28

134. An actual case or controversy exists regarding Plaintiffs' and the other Civil Authority Declaratory Judgment Class members' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

135. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i. Plaintiffs' and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

    ii. Society Insurance is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic

## COUNT VIII
## DECLARATORY JUDGMENT – CONTAMINTION COVERAGE
### (Claim Brought on Behalf of the Contamination Declaratory Judgment Class)

136. Plaintiffs Willy McCoys and Madison Sourdough ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

137. Plaintiffs bring this Count individually and on behalf of the other members of the Contamination Declaratory Judgment Class.

138. Plaintiffs' Society Insurance policies, as well as those of the other Contamination Declaratory Judgment Class members, are contracts under which Society Insurance was paid

29

premiums in exchange for its promise to pay Plaintiffs and the other Contamination Declaratory Judgment Class members' losses for claims covered by the Policy.

139.    Plaintiffs and the other Contamination Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

140.    Society Insurance has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

141.    An actual case or controversy exists regarding Plaintiffs' and the other Contamination Declaratory Judgment Class members' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs and the other Contamination Declaratory Judgment Class members for the full amount of covered Contamination losses incurred by Plaintiffs and the other Contamination Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

142.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Contamination Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs' and the other Contamination Declaratory Judgment Class members' covered Contamination losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

    ii.    Society Insurance is obligated to pay Plaintiffs and the other Contamination Declaratory Judgment Class members the full amount of the covered Contamination losses incurred and to be incurred in connection with the Closure

30

Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IX**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

143. Plaintiffs Willy McCoys and Madison Sourdough ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

144. Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

145. Plaintiffs' Society Insurance policies, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the Policy.

146. Plaintiffs and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

147. Society Insurance has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

148. An actual case or controversy exists regarding Plaintiffs' and the other Extra Expense Declaratory Judgment Class members' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class

31

members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

149.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.     Plaintiffs' and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.     Society Insurance is obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT X**
**DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

150.     Plaintiffs Willy McCoys and Madison Sourdough ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-76 as if fully set forth herein.

151.     Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

152.     Plaintiffs' Society Insurance policies, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

153.     Plaintiffs and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Society Insurance or Society Insurance is estopped from asserting them, and yet Society

32

Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

154. Society Insurance has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

155. An actual case or controversy exists regarding Plaintiffs' and the other Sue and Labor Declaratory Judgment Class members' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

156. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

   i.  Plaintiffs' and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their Policies; and

   ii. Society Insurance is obligated to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a. Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

33

b.      Entering judgment on Counts I-V in favor of Plaintiffs Willy McCoys and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Contamination Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Counts VI-X in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Contamination Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

i.      Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.      Society Insurance is obligated to pay for the full amount of the Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

**VIII.   JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

34

Dated:  April 17, 2020

Respectfully submitted,

/s/ Timothy W. Burns
Timothy W. Burns
State Bar No. 1068086
Jeff J. Bowen
State Bar No. 1074862
Jesse J. Bair
State Bar No. 1083779
Freya K. Bowen
State Bar No. 1066820
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Adam J. Levitt*
Daniel R. Ferri*
Mark Hamill*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com

Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  440-953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

35

Mark Lanier*
Alex Brown*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com

Bryan L. Bleichner*
Jeffrey D. Bores*
Christopher P. Renz*
Gary K. Luloff*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, Minnesota  55401
Telephone:  612-339-7300
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com
gluloff@chestnutcambronne.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiffs*
*and the Proposed Classes*

* Applications for admission *pro hac vice* to be filed