RISING DOUGH, INC. (d/b/a MADISON
SOURDOUGH), WILLY MCCOYS OF
ALBERTVILLE LLC, WILLY MCCOYS
OF ANDOVER LLC, WILLY MCCOYS
OF CHASKA LLC, WILLY MCCOYS
OF SHAKOPEE LLC,                                              Case No.: 2:20-CV-00623-JPS
WHISKEY JACKS OF RAMSEY LLC
(d/b/a WILLY MCCOYS RAMSEY), GREEN HILLS
GRILLE, LLC, AND CASH-MCKEOWN FUTURES LLC,
individually and on behalf of all others similarly situated,

        Plaintiffs,

   v.

SOCIETY INSURANCE,

        Defendant.

## DEFENDANT SOCIETY INSURANCE, A MUTUAL COMPANY'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS [DKT. 19]

Defendant, Society Insurance, a mutual company, submits the attached authority in further support of its Motion to Dismiss:

1.    *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, 2020 WL 4724305 (D.C. W.D. Texas, August 13, 2020)

2.    *10E, LLC v. Travelers Indemnity Co. of Connecticut, et al.*, 2020 WL 5095587 (D.C. Central District of California, August 28, 2020)

Dated this 3rd day of September, 2020.

*Electronically signed by Heidi L. Vogt*

Heidi L. Vogt, SBN 1001318
Beth J. Kushner, SBN 1008591
Janet E. Cain, SBN 1002721
Christopher E. Avallone, SBN 1095465
*Attorneys for Defendant Society Insurance,*
*a mutual company*
**von BRIESEN & ROPER, s.c.**
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Vogt Phone: (414) 287-1258
Fax : (414) 276-1122
Emails: hvogt@vonbriesen.com
bkushner@vonbriesen.com
jcain@vonbriesen.com
cavallone@vonbriesen.com

35261761_1.DOCX

# SECOND SUPPLEMENTAL APPENDIX 1

2020 WL 4724305
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, San Antonio Division.

DIESEL BARBERSHOP, LLC; Wilderness Oaks Cutters, LLC; Diesel Barbershop Bandera Oaks, LLC; Diesel Barbershop Dominion, LLC; Diesel Barbershop Alamo Ranch, LLC; and Henley's Gentlemen's Grooming, LLC, Plaintiffs,
v.
STATE FARM LLOYDS, Defendant.

No. 5:20−CV−461−DAE
|
Signed 08/13/2020

**Attorneys and Law Firms**

Shannon E. Loyd, Loyd Law Firm, PLLC, San Antonio, TX, for Plaintiffs.

W. Neil Rambin, Susan Elizabeth Egeland, Faegre Drinker Biddle & Reath, LLP, Dallas, TX, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

David Alan Ezra, Senior United States District Judge

**\*1** Before the Court is a Motion to Dismiss filed by State Farm Lloyds ("Defendant" or "State Farm") on May 8, 2020. (Dkt. # 9.) Plaintiffs Diesel Barbershop, LLC; Wilderness Oak Cutters, LLC; Diesel Barbershop Bandera Oaks, LLC; Diesel Barbershop Dominion, LLC; Diesel Barbershop Alamo Ranch, LLC; and Henley's Gentlemen's Grooming, LLC (collectively "Plaintiffs") responded on May 22, 2020 (Dkt. # 14), and Defendant filed a reply on May 29, 2020 (Dkt. # 17). The Court presided over a virtual hearing on July 29, 2020, during which Shannon Loyd, Esq., represented Plaintiffs and Neil Rambin, Esq. and Susan Egeland, Esq. represented Defendant. After careful consideration of the memorandum filed in support of and against the motion and after hearing arguments from counsel, the Court—for the reasons that follow—**GRANTS** Defendant's Motion to Dismiss.

FACTUAL BACKGROUND

On February 11, 2020, the World Health Organization identified the 2019 Coronavirus ("COVID-19") as a disease. Since then, COVID-19 has spread across the world, and health organizations, including the Center for Disease Control ("CDC"), characterize COVID-19 as a global pandemic. (See Dkt. # 8.) The outbreak in the United States is a rapidly evolving situation, and the state of Texas saw an exponential increase in COVID-19 cases. To stop "community spread" of COVID-19, state and local governments have issued executive orders that limit the opening of certain businesses and require social distancing. Bexar County Judge Nelson Wolff and Texas Governor Greg Abbott have issued executive orders throughout this crisis, and below are the relevant orders (the "Orders") for the purposes of this case.

a. The Bexar County Orders

County Judge Wolff issued multiple executive orders pertaining to the "state of local disaster ... due to imminent threat arising from COVID-19." (Dkt. # 8, Exh. B.) On March 23, 2020, County Judge Wolff issued an order requiring "all businesses operating within Bexar County" save for those "exempted" to "cease all activities" at any business located in Bexar County from March 24, 2020 until April 9, 2020. (Id.) The order defines exempted businesses as those pertaining to: (a) healthcare services, (b) government functions, (c) education and research, (d) infrastructure, development, operation and construction, (e) transportation, (f) IT services, (g) food, household staples, and retail, (h) services to economically disadvantaged populations, (i) services necessary to maintain residences or support exempt businesses, (j) news media, (k) financial institutions and insurance services, (l) childcare services, (m) worship services, (n) funeral services, and (o) CISA

sectors. (Id.) County Judge Wolff notes that he is authorized "to take such actions as are necessary in order to protect the health, safety, and welfare of the citizens of Bexar County" and "has determined that extraordinary emergency measures must be taken to mitigate the effects of this public health emergency and to facilitate a cooperative response" in line with Governor Abbott's "declaration of public health disaster." (Id.)

***2** In a supplemental executive order dated April 17, 2020, County Judge Wolff emphasizes that "the continued spread of COVID-19 by pre- and asymptomatic individuals is a significant concern in Bexar County and on April 3, 2020, the [CDC] recommended cloth face coverings be worn by the general public to slow the spread of COVID-19 and implementing this measure would assist in reducing the transmission of COVID-19 in San Antonio and Bexar County." (Id.) The goal of the supplemental order was to "reduce the spread of COVID-19 in and around Bexar County" and to "continue to protect the health and safety of the community and address developing and the rapidly changing circumstances when presented by the current public health emergency." (Id.)

b. The State of Texas Order

On March 31, 2020, Texas Governor Greg Abbott signed an executive order closing all "non-essential" businesses from April 2, 2020 until April 30, 2020. (Dkt. # 8, Exh. C.) Governor Abbott's order provides the following:

> NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective 12:01 a.m. on April 2, 2020, and continuing through April 30, 2020, subject to extension based on the status of COVID-19 in Texas and the recommendations of the CDC and the White House Coronavirus Task Force:
>
>> In accordance with guidance from DSHS Commissioner Dr. Hellerstedt, and to achieve the goals established by the President to reduce the spread of COVID-19, every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household.
>
>> "Essential services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services....
>
> In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage establishments, tattoo studios, piercing studios, or cosmetology salons; provided, however, that the use of drive-thru, pickup, or delivery options for food and drinks is allowed and highly encouraged throughout the limited duration of this executive order.

(Dkt. # 8, Exh. C.)

c. Plaintiffs' Insurance Policies

Plaintiffs run barbershop businesses; a type of business deemed non-exempt and non-essential under the Orders. (Dkt. # 8.) State Farm issued insurance policies (the "Policies")[1] to Plaintiffs regarding the insured properties (the "Properties") that are subject of this dispute. (See Dkt. # 9, Exhs. A-1–A-6.)

The Policies state, in relevant part, the following:

> When a Limit Of Insurance is shown in the Declarations for that type of property as described under Coverage A – Buildings, Coverage B – Business Personal Property, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under SECTION I — COVERED CAUSES OF LOSS.

(Id.) The Policies note in Section I–Covered Causes of Loss that State Farm will "insure for accidental direct physical loss to Covered Property" unless the loss is excluded under Section I–Exclusions or limited in the Property Subject to Limitations provision. (Id.) The Policies further contain a "Fungi, Virus, or Bacteria" exclusion (the "Virus Exclusion"), which contains lead-in language and states the following:

> ***3** 1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted

concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

...

**j. Fungi, Virus Or Bacteria**

...

> (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Id.) The Policies also contain an endorsement modifying the businessowners coverage form, including a Civil Authority provision which states in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> 1. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> 2. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Id.) There are various other exclusions within the Policies including for example, the "Ordinance or Law," the "Acts or Decisions" and the "Consequential Loss" exclusions. (Dkt. # 9.)

Policies in March 2020. (Id.) Without seeking additional documentation or information, and without further investigation, State Farm denied Plaintiffs' claims. (Dkt. # 8, Exh. D.) In the denial letter, State Farm asserted that Plaintiffs' claims are not covered as the "policy specifically excludes loss caused by enforcement of ordinance or law, virus, and consequential losses." (Id.) State Farm argued that there is a requirement "that there be physical damage, within one mile of the described property" and "that the damage be the result of a Covered Cause of Loss" which, State Farm asserted, a "virus is not." (Id.)

Plaintiffs sued State Farm in state court on April 8, 2020, after State Farm denied Plaintiffs coverage. (Dkt. # 1, Exh. C.) Defendant timely removed the action to this Court on April 13, 2020. (Dkt. # 1.) In their second amended complaint, Plaintiffs bring claims of breach of contract, noncompliance with the Texas Insurance Code, and breach of the duty of good faith and fair dealing. (Dkt. # 8.) Attached to Plaintiffs' second amended complaint are the Policies, Orders, and State Farm's letter denying coverage.

On May 8, 2020, State Farm filed a motion to dismiss for failure to state a claim. (Dkt. # 9.) The Court granted the parties' joint motion to stay discovery pending a ruling on the motion to dismiss on May 18, 2020. (Dkt. # 12.) Plaintiffs responded to the motion to dismiss on May 22, 2020 (Dkt. # 14), and a week later, Defendant filed its reply (Dkt. # 17). Defendant filed a notice of supplemental authority on July 14, 2020 (Dkt. # 21), and Plaintiffs filed a notice of supplemental authority on July 28, 2020 (Dkt. # 22). The Court held a virtual hearing on this matter on July 29, 2020. Defendant filed an additional notice of supplemental authority on August 7, 2020 (Dkt. # 25), and Plaintiffs filed another notice of supplemental authority on August 12, 2020 (Dkt. # 27). Defendant filed its third notice of supplemental authority on August 13, 2020 (Dkt. # 28), notifying the Court of the United States Judicial Panel on Multidistrict Litigation's decision to deny the creation of an industry-wide multidistrict litigation. (Id., Exh. A.)

PROCEDURAL HISTORY

Plaintiffs assert that due to the COVID-19 outbreak and the Orders, Plaintiffs "have sustained and will sustain covered losses" under the terms of the Policies. (Dkt. # 8.) Plaintiffs filed a claim with State Farm seeking coverage for business interruption to the Properties pursuant to the

TEXAS CONTRACT-INTERPRETATION STANDARDS

**\*4** "Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts." Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th

Cir. 1995). Under Texas contract-interpretation standards, the "paramount rule is that courts enforce unambiguous policies as written" such that court must "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, Inc. v. Lexington Ins. Co., 959 F.3d 671, 674 (5th Cir. 2020). Importantly, an "ambiguity" is "more than lack of clarity"; a court should find an insurance contract ambiguous only if "giving effect to all provisions, its language is subject to two or more reasonable interpretations." Id. (internal quotation marks and citation omitted). To determine ambiguity, which is a question of law, a court must "examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless." Id. (internal quotation marks and citation omitted); see also Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole."); State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010) ("The fact that the parties may disagree about the policy's meaning does not create an ambiguity." (citations and internal quotation marks omitted)). "The goal in interpreting ... [language within the contract] is to ascertain the true intentions of the parties as expressed in the writing itself." Richards v. State Farm Lloyds, No. 19-0802, 2020 WL 1313782, at *5 (Tex. Mar. 20, 2020) (citation and internal quotation marks omitted).

RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In analyzing whether to grant a Rule 12(b)(6) motion, a court accepts as true "all well-pleaded facts" and views those facts "in the light most favorable to the plaintiff." United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F. 3d 343, 346 (5th Cir. 2013) (citation omitted). A court need not "accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Furthermore, in assessing a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to the complaint, documents attached to the complaint, and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

DISCUSSION

State Farm argues that for business income coverage to apply, the Policies explicitly require (1) an accidental direct physical loss to the insured property and (2) that the loss is not excluded. (Dkt. # 9.) Defendant asserts that Plaintiffs fail to properly plead direct physical loss to the Properties as Plaintiffs argue that the Orders are the reason for the business interruption claim and fail to show that the Properties have been tangibly "damaged" per se. (Dkts. ## 9, 17.) Defendant also argues that regardless, Plaintiffs fail to overcome the Virus Exclusion hurdle that is unambiguously within the Policies and was added to these Policies in response to the SARS pandemic in the early 2000s. (Id.)

*5 In response, Plaintiffs assert that the language in the Policies does not require a tangible and complete physical loss to the Properties, but rather allows for a partial loss to the Properties, which includes the loss of use of the Properties due to the Orders restricting usage of the Properties. (Dkt. # 14.) Plaintiffs also argue that it is not COVID-19 within Plaintiffs' Properties that caused the loss directly, but rather that it was the Orders that caused the direct physical loss and thus the Virus Exclusion should not apply. (Id.) Plaintiffs also argue that the Orders were issued to protect public health and welfare, and that Plaintiffs claims thus fall under the Civil Authority provision within the Policies. (Id.)

Based on the parties' filings, plain language of the Policies in question, and argument at the hearing, as much as the Court sympathizes with Plaintiffs' situation, the Court determines that the motion to dismiss must be granted for the following reasons.

a. Accidental Direct Physical Loss

This Court is mandated to "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, 959 F.3d at 674. The Court looks at the coverage provided by the Policies as a whole in order to determine the plain language. Id. Here, the Policies are explicit that there has to be an accidental, direct physical loss to the property in question. The Court agrees with Plaintiffs that some courts have found physical loss even without tangible destruction to the covered property. See e.g., TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (noting that "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces"); Murray v. State Farm Fire & Cas. Co., 203 W. Va. 477, 493 (1998) (" 'Direct physical loss' provisions require only that a covered property be injured, not destroyed. Direct physical loss also may exist in the absence of structural damage to the insured property." (citation omitted)). The Court also agrees that a virus like COVID-19 is not like a hurricane or a hailstorm, but rather more like ammonia, E. coli, and/or carbon monoxide (i.e. cases in which the loss is caused by something invisible to the naked eye), and in such cases, some courts have found direct physical loss despite the lack of physical damage. See e.g., Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002) (holding that while mere installation of asbestos was not loss or damage, the presence or imminent threat of a release of asbestos would "eliminate[ ] or destroy[ ]" the function of the structure, thereby making the building "useless or uninhabitable"); Lambrecht & Assocs., Inc. v. State Farm Lloyds, 119 S.W.3d 16, 24–26 (Tex. App. 2003) (noting that while State Farm argued that the losses were not "physical" as they were not "tangible," the court found that under the "direct language" of the policy allowed for coverage to "electronic media and records" and the "data stored on such media" as "such property is capable of sustaining a 'physical' loss"); Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 406 (1st Cir. 2009) ("We are persuaded both that odor can constitute physical injury to property ... and also that allegations that an unwanted odor permeated the building and resulted in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property has been claimed.").

Even so, the Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable. See Dickie Brennan & Co. v. Lexington Ins. Co., 636 F.3d 683, 686 (5th Cir. 2011) (affirming summary judgment and holding that there was no coverage under the civil authority provision of the policy as plaintiffs "failed to demonstrate a nexus between any prior property damage and the evacuation order" when the city issued a mandatory evacuation order prior to the arrival of a hurricane and plaintiffs allegedly suffered business interruption losses); United Air Lines, Inc. v. Ins. Co. of State of PA, 439 F.3d 128, 134 (2d Cir. 2006) (determining that United could not show that its lost earnings resulted from physical damage to its property or from physical damage to an adjacent property when the government shut down the airport after the 9/11 terrorist attacks). For instance, unlike Essex Ins. Co., COVID-19 does not produce a noxious odor that makes a business uninhabitable. It appears that within our Circuit, the loss needs to have been a "distinct, demonstrable physical alteration of the property." Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co., 181 F. App'x 465, 470 (5th Cir. 2006) ("The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (citation omitted)); see also Ross v. Hartford Lloyd Ins. Co., 2019 WL 2929761, at *6–7 (N.D. Tex. July 4, 2019) ("direct physical loss" requires "a distinct, demonstrable, physical alteration of the property" (citing 10A Couch on Ins. § 148:46 (3d ed. 2010)).) Thus, the Court finds that Plaintiffs fail to plead a direct physical loss.

b. The Virus Exclusion

**\*6** Even if the Court had found that the language within the Policies was ambiguous and/or that Plaintiffs properly plead direct physical loss to the Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims. The language in the lead-in of the Virus Exclusion (also called the anti-concurrent causation ("ACC") clause) expressly states that State Farm does not insure for a loss regardless of "whether other causes acted concurrently or in any sequence within the excluded event to produce the loss." (See Dkt. # 9, Exhs. A–1–A–6.) Here, Plaintiffs allege that the loss of business occurred as a result of the Orders that mandated non-essential businesses to discontinue operations for a set period of time to help staunch community spread of COVID-19. (Dkts. ## 8, 14.) Plaintiffs also assert that the Court should find that the Virus Exclusion does not apply because COVID-19 was

not present at the Properties. (Id.)

The Court notes that the parties vehemently dispute how to read the lead-in language to the Virus Exclusion. Defendant cites Tuepker v. State Farm Fire & Cas. Co., 507 F.3d 346 (5th Cir. 2007) in support of the argument that the lead-in language to the Virus Exclusion bars Plaintiffs' claims and that the lead-in language is unambiguous and enforceable. Meanwhile, Plaintiffs cite Stewart Enterprises, Inc. v. RSUI Indem. Co., 614 F.3d 117 (5th Cir. 2010) in support of their assertion that the lead-in language does not exclude coverage here.

The Court finds the facts in Stewart Enterprises distinguishable from the facts here. There, the ACC clause was within a policy provided by Lexington Insurance Company and contained different language than the ACC clause in State Farm's Policies here. See Stewart Enterprises, 614 F.3d at 125 (noting in the ACC clause that "this policy does not insure against loss or damage caused directly or indirectly by any of the excluded perils" as "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss"). In addition, the issue in Stewart Enterprises was that the insurer was seeking "to use the ACC clause to bar recovery for damage caused by two _included_ perils." Id. at 126 (emphasis added). The Fifth Circuit rightly decided there that it would be absurd to "read the policy to force Stewart to prove a windless flood." Id. at 127.

But here, the Court can read the Policies objectively and without "creating difficult causation determination where none otherwise exist." Id. Like the Fifth Circuit in Tuepker, the Court finds that here, the State Farm ACC clause within the Policies is unambiguous and enforceable. See Tuepker, 507 F.3d at 356. The Policies expressly state that State Farm does not "insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]" (See Dkt. # 9, Exhs. A-1–A-6.) Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing. Furthermore, while the Virus Exclusion could have been even more specifically worded, that alone does not make the exclusion "ambiguous." See In re Katrina Canal Breaches Litig., 495 F.3d 191, 210 (5th Cir. 2007) ("The fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous.").

**\*7** Thus, the Court finds that the Policies' ACC clause excluded coverage for the losses Plaintiffs incurred in complying with the Orders. See, e.g., JAW The Pointe, L.L.C. v. Lexington Ins. Co., 460 S.W.3d 597, 610 (Tex. 2015) ("Because the covered wind losses and excluded flood losses combined to cause the enforcement of the ordinances concurrently or in a sequence, we agree with the court of appeals that the policy's anti-concurrent-causation clause excluded coverage for JAW's losses."). Thus, even if the Court found direct, physical loss to the Properties, the Virus Exclusion applies and bars Plaintiffs' claims.

c. The Civil Authority Provision

In light of the foregoing, the Court also finds that the Civil Authority provision within the Policies is not triggered. Plaintiffs' recovery remains barred due to the unambiguous nature of the events that occurred, causing the Virus Exclusion to apply such that Plaintiffs fail to allege a legally cognizable "Covered Cause of Loss." See Dickie Brennan, 636 F.3d at 686–87 ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.").

CONCLUSION

The Court finds merit in Defendant's arguments and determines that Plaintiffs' breach of contract, Texas Insurance Code,[2] and breach of duty of good faith and fair dealing claims all fail. While there is no doubt that the COVID-19 crisis severely affected Plaintiffs' businesses, State Farm cannot be held liable to pay business interruption insurance on these claims as there was no

direct physical loss, and even if there were direct physical loss, the Virus Exclusion applies to bar Plaintiffs' claims. Given the plain language of the insurance contract between the parties, the Court cannot deviate from this finding without in effect re-writing the Policies in question. That this Court may not do.

For the reasons stated above, the Motion to Dismiss (Dkt. # 9) is **GRANTED**. Because allowing Plaintiffs leave to amend their claims would be futile, the Court **DISMISSES** Plaintiffs' claims. The Clerk's office is instructed to **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 4724305

Footnotes

1     Defendant attaches each Plaintiff's policy and endorsement to the policy to the motion to dismiss. (See Dkt. # 9, Exhs. A-1–A-6.) Defendant asserts that "the relevant provisions of the policies are identical" (Dkt. # 9), and thus this Court shall cite the policies together without analyzing each Plaintiff's policy separately.

2     Plaintiffs expressly seek to drop their allegation of misrepresentation pending further discovery in light of this Court's ruling in Brasher v. State Farm Lloyds, 2017 WL 9342367, at *7 (W.D. Tex. Feb. 2, 2017). (Dkt. # 14.)

**End of Document**     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

© 2020 Thomson Reuters. No claim to original U.S. Government Works.     7

# SECOND SUPPLEMENTAL APPENDIX 2

2020 WL 5095587
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

10E, LLC
v.
Travelers Indemnity Co. of Connecticut et al.

Case No. 2:20-cv-04418-SVW-AS
|
Filed 08/28/2020

**Attorneys and Law Firms**

Paul M. Cruz, Deputy Clerk, Attorneys Present for Plaintiffs: N/A

N/A, Court Reporter / Recorder, Attorneys Present for Defendants: N/A

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [26] AND DENYING PLAINTIFF'S MOTION TO REMAND [24]

The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

### I. Introduction

**\*1** On June 12, 2020, Plaintiff 10E, LLC ("10E") filed a motion to remand this case to state court. Dkt. 24. On June 26, 2020, Defendant Travelers Indemnity Co. of Connecticut ("Travelers" or "Defendant") filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC"). Dkt. 26. For the reasons explained below, the Court DENIES Plaintiff's motion to remand and GRANTS Defendant's motion to dismiss.

### II. Factual and Procedural Background

On April 10, 2020, Plaintiff, a restaurant in downtown Los Angeles, filed its initial complaint in Los Angeles Superior Court, naming as defendants Travelers and Mayor Eric Garcetti. Dkt. 1, Ex. A. On May 15, 2020, Travelers, which is incorporated and has its principal place of business in Connecticut, Dkt. 1, at 5, removed the case to this Court, arguing that Garcetti was fraudulently joined to defeat diversity jurisdiction, *Id.* at 6-10.

On May 22, 2020, Defendant filed a motion to dismiss Plaintiff's initial complaint. Dkt. 14. On June 12, 2020, Plaintiff filed its FAC. Dkt. 22.[1] The FAC asserts claims for breach of contract, bad faith, and violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). *Id.* Plaintiff seeks both damages and declaratory relief. *Id.*

According to the FAC, beginning on March 15, 2020, public health restrictions adopted by Mayor Garcetti prohibited in-person dining at Plaintiff's restaurant, limiting Plaintiff to offering takeout and delivery. Dkt. 22, at 5. Plaintiff alleges that these restrictions have caused a "complete and total shutdown" of its business. *Id.*

Plaintiff seeks compensation for lost business and other costs of the disruption under the Business Income and Extra Expense Coverage provision of its insurance policy with Defendant ("the Policy"). *Id.* at 3. Defendant attached a copy of the Policy to its motion to dismiss. Dkt. 27-2, Ex. 1.

The Policy covers losses and expenses "caused by action of civil authority that prohibits access to the described premises." *Id.* at 121. "The civil authority action must be due to direct physical loss of or damage to property...." *Id.*

The Policy also contains an endorsement entitled, "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA." *Id.* at 247. This exclusion applies to "action of civil authority." *Id.* It reads as follows: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.*

Plaintiff alleges that it is entitled to recover under the Policy because public health restrictions prohibited access to its restaurant. *Id.* at 5. The restrictions caused "physical damage" by "labeling of the insured property as non-essential" and "prevent[ing] the ordinary intended use of the property." *Id.* Plaintiff also alleges that "[t]he only virus exclusion that relates in theory to a virus is not

applicable here" and that the virus exclusion "does not include exclusion for a viral pandemic." *Id.* at 6-7.

**\*2** Defendant filed its motion to dismiss Plaintiff's FAC on June 26, 2020. Dkt. 26. Plaintiff filed an opposition on August 10, 2020. Dkt. 33. Defendant filed its reply on August 17, 2020. Dkt. 36.

Plaintiff filed its motion to remand to state court on June 12, 2020. Dkt. 24. Defendant filed an opposition on June 29, 2020. Dkt. 29. Plaintiff filed its reply on August 17, 2020. Dkt. 35.

### III. Plaintiff's Motion to Remand to State Court

#### *a. Legal Standard*

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Diversity jurisdiction under 28 U.S.C. § 1332(a) requires both that the amount in controversy exceed $75,000, and that complete diversity of citizenship exists between the parties.

Persons are domiciled in the places where they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A corporation is a citizen of "every State and foreign state by which it has been incorporated and the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Under the sham defendant doctrine, a defendant's citizenship should be disregarded for purposes of diversity jurisdiction when the defendant "cannot be liable on any theory." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted). "If there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (citation omitted) (italics in original). The defendant bears a "heavy burden" to overcome the "general presumption against [finding] fraudulent joinder." *Id.* (citation omitted).

#### *b. Analysis*

Defendant's removal is based on an argument that Mayor Garcetti, a citizen of California, was fraudulently joined to defeat diversity jurisdiction between Plaintiff, a citizen of California, and Defendant, a citizen of Connecticut. Dkt. 1, at 7-10. The Court agrees.

Plaintiff's only asserted claim against Garcetti is a standalone claim for declaratory relief. Dkt. 22, at 6-8. Plaintiff does not appear to argue that its FAC presently states a valid claim against Garcetti. Dkt. 24, at 2-3. Nor could it. Declaratory relief is not a standalone cause of action. *Mayen v. Bank of America N.A.*, 2015 WL 179541, at \*5 (internal citations omitted) (N.D. Cal. 2015) ("[D]eclaratory relief is not a standalone claim."); 28 U.S.C. § 2201(a) (a federal court may only award declaratory relief "[i]n a case of actual controversy within its jurisdiction").

**\*3** Plaintiff's failure to state a cause of action does not by itself establish that Garcetti was fraudulently joined. *See Grancare*, 889 F.3d at 549 ("[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent."). However, it does require the Court to find that Plaintiff could possibly amend its complaint to state a cause of action against Garcetti. *See id.* ("[T]he district court must consider ... whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend.").

The Court is unable to imagine how such an amendment is possible. Plaintiff argues that, because "the denial of [Defendant's] policy would not have occurred absent Mayor Garcetti's order, the propriety of Mayor Garcetti's order is a significant issue that needs to be resolved." Dkt. 22, at 6-8. However, Plaintiff neither articulates a ground for some future challenge to the legality of Garcetti's

order nor explains how such a challenge could be raised in the context of this insurance dispute. While its burden to show fraudulent joinder is "heavy," *Grancare*, 889 F.3d at 548, Defendant has carried that burden here. The Court concludes that Garcetti was fraudulently joined and discounts his citizenship for purposes of assessing diversity of parties.

The Court is unpersuaded by Plaintiff's other arguments supporting remand. Plaintiff argues that, because there are other insurance cases now pending in state court concerning recovery of pandemic-related losses under business interruption policies, the Court should remand the case to state court under a laundry list of prudential considerations and abstention doctrines. Crucially, as Defendant points out, although they may involve the same lawyers, these other pandemic-related insurance cases do not involve the same parties and issues as this litigation. Dkt. 29, at 18-19. Consequently, the Court has no concern that its exercise of jurisdiction here will interfere with any parallel state proceedings, and it concludes without detailed analysis that none of the doctrines raised by Plaintiff favor remand. *See Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (citing *Younger v. Harris*, 401 U.S. 37, 43 (1971)) ("*Younger* abstention is grounded in a 'longstanding public policy against federal court interference with state court proceedings.' "); *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017) ("*Colorado River* and its progeny provide a multi-pronged test for determining whether 'exceptional circumstances' exist warranting federal abstention from *concurrent federal and state proceedings.*") (italics added); *Gov. Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (citation omitted) ("If there are *parallel state proceedings* involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.") (italics added).

Because Defendant has met its burden to show that removal was proper, the Court denies Plaintiff's motion to remand the case to state court.

**IV. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint**

*a. Legal Standard*

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

**\*4** In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*b. Analysis*

Defendant argues that the FAC should be dismissed for three reasons: 1) the Policy's virus exclusion clause precludes recovery, 2) Plaintiff fails to allege that public health restrictions prohibited access as required for civil authority coverage, and 3) Plaintiff does not plausibly allege that it suffered "direct physical loss of or damage to property" as required for civil authority coverage. *See generally* Dkt. 27. Without reaching the first two, the Court agrees with Defendant's third argument.

Although "[a]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," a court can consider extrinsic material when its "authenticity ... is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted). Plaintiff does not contest the authenticity of the insurance policy attached to Defendant's memorandum. *See generally* Dkt. 33.

Because Plaintiff seeks to recover under the Policy, *see generally* Dkt. 22, the FAC necessarily relies on the Policy. Therefore, the Court will consider the language contained directly in the Policy in resolving this motion. See *Khoury Investments Inc. v. Nationwide Mutual Ins. Co.*, 2013 WL 12140449, at *2 (C.D. Cal. 2013) (citing *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)) ("Because Plaintiffs refer to this insurance policy in their FAC and their claim for breach of contract relies on the terms of the policy ..., this document would likely be appropriate for judicial notice as 'unattached evidence on which the complaint necessarily relies.' ").

"When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citation and quotation marks omitted). The property insurance Policy at issue here requires "direct physical loss of or damage to property" for recovery under the civil authority provision. Dkt. 27-2, Ex. 1., at 121.

Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citation and quotation marks omitted). "Detrimental economic impact" does not suffice. *Id.* (citation and quotation marks omitted); *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) ("[D]iminution in value is not a covered peril, it is a measure of loss" in property insurance).

**\*5** An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property. For example, in *MRI Healthcare Ctr.*, the court held that lost use of an MRI machine after it was powered off did not qualify as a "direct physical loss." 187 Cal. App. 4th at 789. Likewise, in *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (2003), the court held that a loss of valuable electronic data did not qualify as "direct physical loss or damage" without any physical alteration to the storage media. 114 Cal. App. 4th at 555-56. Finally, in *Doyle*, 21 Cal. App. 5th 33 (2018), the court held that purchasing counterfeit wine did not count as a loss to the wine covered by a property insurance policy without a physical alteration to the insured property. 21 Cal. App. 5th at 38-39.

Plaintiff's FAC attempts to make precisely this substitution of impaired use or value for physical loss or damage. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage.

Plaintiff characterizes in-person dining restrictions as "labeling of the insured property as non-essential." Dkt. 22, at 5. That "labeling" surely carries significant social, economic, and legal consequences. But it does not physically alter any of Plaintiff's property.

Plaintiff's FAC appears to suggest that Plaintiff's business hardships resulted from the physical action of the novel coronavirus itself, which "infects and stays on surfaces of objects or materials ... for up to twenty-eight days." *Id.* at 4. However, Plaintiff does not allege that the virus "infect[ed]" or "stay[ed] on surfaces of" its insured property. Whatever physical alteration the virus may cause to property in general, nothing in the FAC plausibly supports an inference that the virus physically altered Plaintiff's property, however much the public health response to the virus may have affected business conditions for Plaintiff's restaurant. Even if Plaintiff could somehow recover for physical loss or damage to other property, such loss or damage could hardly qualify as "direct." *See MRI Healthcare Ctr.*, 187 Cal. App. 4th at 779 (internal citation and quotation marks omitted) ("[D]irect means [w]ithout intervening persons, conditions, or agencies; immediate.").

Plaintiff attempts to circumvent the plain language of the Policy by emphasizing its disjunctive phrasing – "direct physical loss of *or* damage to property," Dkt. 27-2, Ex. 1, at 121 – and insisting that "loss," unlike "damage," encompasses impaired use. To support this argument, Plaintiff relies on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. 2018). In *Total Intermodal*, the court concluded that giving separate effect to "loss" and "damage" in the phrase, "direct physical loss or damage," required recognizing coverage for "the permanent dispossession of something." *Id.* at *4.

Even if the Policy covers "permanent dispossession" in addition to physical alteration, that does not benefit Plaintiff here. Plaintiff's FAC does not allege that it was permanently dispossessed of any insured property. *See generally* Dkt. 22. As far as the FAC reveals, while public health restrictions kept the restaurant's "large groups" and "happy-hour goers" at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining

room, bar, flatware, and all of the accoutrements of its "elegantly sophisticated surrounding." *Id.* at 3.

The Court therefore concludes that Plaintiff has not alleged facts plausibly supporting an inference that it is entitled to coverage under the Policy.

**\*6** Because it is not entitled to coverage under the Policy, Plaintiff cannot state a claim for breach of contract, *see 1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020-21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim."), or bad faith, *see Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) ("Where benefits are withheld for proper cause, there is no breach of the implied covenant.").

Likewise, Plaintiff's UCL claim is based on an allegation that the Policy represents that Plaintiff would be covered under these circumstances. Dkt. 22, at 10-11. The Court has concluded that Plaintiff was not entitled to recover under the Policy on the facts alleged in the FAC. That determination is based on an interpretation of the "ordinary and popular sense" of the Policy language. *Palmer*, 21 Cal. 4th at 1115. If the ordinary and popular sense of the Policy language does not support recovery on these facts, Plaintiff cannot plausibly allege that the Policy constitutes fraudulent, unfair, or unlawful conduct giving rise to UCL liability. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999)) ("[T]he breadth of [the UCL] does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as one for unfair competition."). Therefore, the Court also dismisses Plaintiff's UCL claim.

### V. Conclusion

For the reasons articulated above, the Court DENIES Plaintiff's motion to remand the case to state court and GRANTS Defendant's motion to dismiss the FAC. The Court will allow Plaintiff leave to amend its complaint within 14 days of the issuance of this Order.

_____ : _____

Initials of Preparer PMC

**All Citations**

Slip Copy, 2020 WL 5095587

### Footnotes

1     The Court DENIES as moot Defendant's motion to dismiss Plaintiff's initial complaint. Dkt. 14.

**End of Document**     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.     5